## FOWLER. MILLS & Co. *v.* D. SMEDLEY ET AL.

**Contracts—Rule of Law Changed by Usages of Trade and Custom—Steam Boats.**

The rule of law in relation to contract may be changed by usages of trade and custom in particular localities. But before a custom can become a law, it must appear that the usage has been general and uniform, and the custom peaceably acquiesced in, and not subject to contention and dispute.

**Steamboats—Liens on for Supplies Sold.**

The statutes give no lien on a steamboat to which goods and supplies are sold, for speculation by the parties or to enable the boat to earn freight.

**Contract—Assumption by Bailee of Debts Due Steamboat.**

A contract by a bailee to become responsible for all the existing debts of a steamboat, the use of which had been transferred to him, is held to be an obligation only to pay such debts and liabilities as were liens on the boat for their payment, and not for such debts as had been conracted by former bailees for speculation.

**Statutes—Lien on Steamboats—Contracts by Usage and Custom.**

A statute giving a lien on steamboats for certain specific debts, will

Opinion of the Court.

operate to destroy any local custom by which liens were asserted for debts and liabilities not enumerated in the statute. Cerain specific creditors have by a special statute, liens on steamboats for their debts, and for other debts of their owners they may be seized and sold under the general law on the subject; and a custom of a particular place which would secure to creditors of the actual owners of steamboats preferred liens on such boats for the price of produce, or other articles sold to said owners to be transported by freight, or to earn freight, might be reasonable and just, while to make them liable by special lien, or otherwise for the debts of persons not the owners, would be altogether unreasonable.

### Customs and Usages—Special Customs—Contracts.

Special customs so often create confusion of legal rules in directions not contemplated in their adoption, they are to be admited into the law with great reluctance; and it cannot often be a hardship to parties to reject a custom, so long as they are left free to make their own bargains, and can if they are disposed to do so, incorporate the custom into their contract, as a part thereof.

### Same—Custom· Must Be Certain and Reasonable.

To make a custom and usage a bona fide one, it is a pre-requisite that the custom was certain, and that it was a reasonable one. And of the latter, where parties would charter a steamboat, they could purchase articles to transport on it more valuable than the boat itself, and if it should be liable for the price, the property of the owner could be incumbered and put to hazard, by the reckless conduct of an insolvent bailee.

### Pleadings—Allegations of Petition—Customs and Usages—Uniformity a First Requisite to Constitute.

Uniformiy being the first requisite in the establishment of law by custom, a petiton that alleges in substance that, in the case of furnishing a steamboat with goods and supplies for speculation by parties thereto, or to produce freight for the boat, that in all such cases steamboat men, merchants and others at Paducah, Ky., and up the Tennessee river, regard the boat liable for such debts, and that it Las been so long acquiesced ·in that it has become a well established usage, and that it is a valid custom is held not sufficient to establish that the custom was uniform and general.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

May 27, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

This action was brought in equity by appellants against appellees to enforce the collection of a debt evidenced by a due bill, as follows:

"Paducah, June 28, '66.

"$434.45-100.  Due Fowler, Mills & Co. four hundred and thirty-four 45-100 dollars for corn and hay sold *Str*. Jonas Powell.

"C. J. Williams, Clk."

It is alleged in the petition that the plaintiffs sold on the 8th, 15th and 19th days of May, 1866, to the steamboat Jonas Powell, and owners, said steamer being then a regular packet plying between the ports of Paducah, Ky., and Eastport, Miss., a lot of corn, hay, etc., to the amount named in the due bill, and for which the same was executed. That the contract was made with the captain and clerk of said steamer, and the articles for which the due bill was executed were furnished for the use of the owners thereof.

They allege that said Williams and one C. C. Smedley (since deceased) on the 8th of March, 1866, hired or chartered said steamer from the owners, Norton, Patton and others, for the term of six months, with the privilege of extending the time three months longer, said boat to be returned at the end of the term, in good order, *and free from debts, and incumbrances,* and that the defendant Dorsey Smedley *guaranted* in writing the faithful performance of the undertaking and agreements of the said Williams, and C. C. Smedley; that under said contract said steamer was run as a packet up the Tennessee river from Paducah, Ky.  The charter contract is referred to, and made part of the petition.

They further allege that on the 2nd of June, 1866, the defendant Dorsey Smedley, by a contract with C. C. Smedley, and said J. C. Williams, got a transfer of the charter party, and the privilege of running the boat for the unexpired term, that they had to run it, in consideration of which he obligated himself to pay off and satisfy all the debts and liabilities of said boat, contracted either before or after the transfer to him, and agreed to look to C. C. Smedley and J. C. Williams individually for the debts he might be required to pay, by reason of his contract, and which had been incurred during the time they run the

boat. They refer to the deed of transfer, and make it a part of the petition.

That in August, 1866, C. C. Smedley died insolvent, and that J. C. Williams is 'insolvent also. That D. Smedely before the expiration of the term for which it was chartered ran said boat out of and beyond the jurisdiction of the court, and it still remains beyond the jurisdiction of said court.

That at the time of the sale of the articles named in the due bill, they knew C. C. Smedley the captain, and J. C. Williams the clerk, were insolvent, and did not give them credit for the produce, but debited the price thereof to the boat itself, and looked to it for their pay, and conclude the paragraph in these words:

> "and that in all cases of similar nature, it is the boat herself that is regarded as good for the debt, and that the habit of regarding the boat as liable *for the debt* of that character up the Tennessee river from *this point* has been acted upon, and regarded by the steamboat men and others *here in town,* and on said river, that it has now from the length of time, certainty, etc., grown up to be a well established usage."

In the 3rd paragraph, the plaintiffs allege that the produce was purchased to take up the Tennessee river, to supply the deficiency of lading, and by a profit on the sale therof, to make the freight, which is customary with the owners, and masters of boats navigating that river, in order to render the business remunerative. And by the amended petition it is alleged that by· the usage and custom of the trade such boats so employed did buy supplies (hay and corn included), for the accommodation of their customers upon the river, and such purchases were made with a view to freight, that it was customary, and the usage of trade, for merchants and others at Paducah to sell to such packet boats, such supplies, and the boat became chargeable with and liable therefore, and that said custom was valid, certain, notorious and reasonable. Wherefore, they prayed to be sustained to all the rights of a creditor against said Dorsey Smedley, and for a judgment against him, and for general relief.

To the petition Dorsey Smedley put in a demurrer, which was sustained, and the plaintiffs failing to plead further, their petition was dismissed as to him, of which ruling they complain.

The sole question, therefore, is, whether the allegations of the petition to charge appellee with the debt.

For debts created as this was, by the purchase of articles for speculation, or to earn freight, the statute gives no lien on the boat. It is not alleged that appellee was a party to, or interested in the contract for the produce, nor is he an obligor on the due bill given for its price. If therefore he can be made responsible for the debt, it must be done by some change in the settled law of contracts, which, as is contended by the counsel for appellant in his very plausible argument, has been done by the usage of trade, and custom, in the city of Paducah in reference to this particular class of debts.

The proposition is not controverted that the rule of law in relation to contracts may be changed by the usages of trade and custom in particular localities; but the question is, are the facts stated in the petition, and admitted to be true by the demurrer, sufficient of themselves to change the rule, and abolish a local custom as the governing rule in this case.

Before a custom can become a law, it must appear that the usage has been general and uniform, and the custom peaceably acquiesced in, not subject to contention and dispute. Brown's Legal Maxims (5th Am. ed), 823; Oebrich v. Ford, 23; How., 49.

Uniformity, then, is the first requisite in the establishment of a law by custom; it is not alleged, in substance, that in all such cases steamboat men, merchants and others at Paducah, and up the Tennessee river, regard the boat liable for such debts, and that it has been so long acquiesced in that it has become a well established usage, and that it is a valid custom, by which the pleader is understood to mean, a custom enforcible, or valid as a law, and cures the omission to state that the custom was uniform and general.

It is alleged that the custom was certain, and the facts stated may be regarded as sufficient to authorize the conclusion that it was certain, which is the 2nd requisite to a good custom.

But whether the facts stated make the custom a reasonable one, which is the 3rd requisite to a good custom, is a much more difficult and serious proposition.

Certain specific creditors, have by a special statute, preferred liens on steamboats for their debts, and for other debts of their owners they may be seized, and sold under the general law on the

subject, just as other property is liable for the satisfaction of the debts of owners; and a custom of a particular place which would secure to creditors of the *actual owners* of steamboats, preferred liens on such boats for the price of produce, or other articles sold to said owners to be transported for freight, or to earn freight, might be reasonable and just, while to make them liable by special lien, or otherwise, for the debts of persons not the owners, would be altogether unreasonable; parties chartering a steamboat could purchase articles to transport on it, more valuable than the boat itself, and if it should be liable for the price, the property of the owner could be incumbered, and put to hazard by the reckless conduct of an insolvent bailee.

It is not alleged that by the local custom of Paducah, and up the Tennessee river, steamboats can be subjected to the payment of debts contracted for produce, and articles purchased for freight to be transported, by mere bailees—and even if it had been alleged, a custom so unjust to owners and unreasonable should not be sanctioned and enforced by courts of justice.

The allegation that D. Smedley had by his contract undertaken to pay the debts and liabilities of the boat is to be understood as an obligation to pay such debts and liabilities as were liens on the boat for their payment, and as this is not of that character, it is not embraced in the agreement.

As was said in Strong vs. Grand Trunk Railway Company, September No. 1867, A. L. R., 680, special customs so often create confusion of legal rules in directions not contemplated in their adoption, they are to be admitted into the law with great reluctance; and it cannot often be a hardship to parties to reject a custom, so long as they are left free to make their own bargains, and can, if they are disposed to do so, incorporate the custom into their contract, as part thereof. We are of the opinion for the reasons herein stated that the answer was insufficient.

But even if we should be mistaken in this view of the case, the statute giving liens on steamboats for certain specific debts, would operate to destroy any local custom by which liens were asserted for debts and liabilities not enumerated in the statute.

Wherefore, the judgment is affirmed.

*Campbell & Bullock, for appellants.*